## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| JOHNTA DESHUN SILVERBURG, | § | |
| #02115871 | § | |
| | § | CIVIL ACTION NO.  4:20cv651 |
| VS. | § | |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

*Pro Se* Petitioner Johnta Deshun Silverburg, an inmate confined in the Texas prison system,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred

to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of

law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the

Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States

Magistrate Judge.

### I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Collin County conviction, Cause No. 416-81700-2015. On

February 9, 2017, a jury found Petitioner guilty of continuous trafficking of persons. (Dkt. #19-

29, p. 37). The trial court sentenced Petitioner to forty years' confinement. (Dkt. #19-29, p. 37).

Petitioner appealed his conviction, which was affirmed on February 5, 2018. *Silverburg v.

State*, No. 05-17-00171-CR, 2018 WL 703338 (Tex. App. Feb. 5, 2018) (Dkt. #19-4). Petitioner

filed a petition for discretionary review ("PDR") (Dkt. #19-8), which the Texas Court of Criminal

Appeals ("TCCA") refused on June 13, 2018 (Dkt. #19-9).

Petitioner filed an application for state habeas corpus relief on August 9, 2019. (Dkt. #19-

29, pp. 58-86). On March 13, 2020, the state habeas court entered findings of fact and

recommended that Petitioner's application be denied. (Dkt. #19-29, pp. 234-45). On July 1, 2020, the TCCA denied the application without a written order on the findings of the state habeas court without a hearing and on the court's independent review of the record. (Dkt. #19-27).

Petitioner filed the instant petition (Dkt. #3) on July 16, 2020.[1] Petitioner asserts the following claims for relief:

(1)    The evidence was legally insufficient because the State failed to identify anyone with whom the victim was forced by Petitioner to prostitute herself.

(2)    The evidence was legally insufficient because the State failed to produce any evidence that he forced, coerced, threatened, or assaulted the victim into prostitution.

(3)    Trial counsel was ineffective for failing to object to the prosecutor's closing argument that allowed the jury to consider offenses that occurred during times of voluntary prostitution by the victim.

(4)    Trial counsel was ineffective for failing to adequately request an accomplice-witness as a matter of law instruction.

(5)    Trial counsel was ineffective for failing to adequately request an accomplice-witness as a matter of fact instruction be added to the jury charge.

(6)    Trial counsel was ineffective for failing to object on the grounds of double jeopardy, res judicata, collateral estoppel, or issue preclusion to evidence that was tied to allegations that had been "no-billed" by a grand jury.

(7)    Trial counsel was ineffective based on the cumulative effect of counsel's errors.

(8)    Appellate counsel was ineffective for failing to raise a legal insufficiency claim and failing to adequately argue the raised accomplice-witness instruction issue.

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on July 16, 2020. (Dkt. #3, p. 12).

(Dkt. #3, pp. 6-9). The Director filed a response, arguing that Petitioner's claims are procedurally barred or without merit. (Dkt. #18). Petitioner filed a reply. (Dkt. #25).

## II. FACTUAL BACKGROUND

The Fifth District Court of Appeals set out the facts as follows:

Appellant met Kayla Matteson in early 2011. At first, he cared for her son while she worked as a prostitute, and by the end of that year, he came to be managing her prostitution, requiring her to give him the money she made. Over the years, appellant lived with Matteson and with other women.

In early 2015, appellant met C.P. online. He provided C.P.'s information to Matteson, so that she could purchase a bus ticket for C.P[.] to travel from El Paso to Dallas. C.P. then moved into a rented house where appellant, Matteson, and two other women were living. Matteson did not talk to C.P., but she learned from appellant that C.P. was 17, not 18. Matteson attempted to convince appellant it was not a good idea for a minor to be living with them, but when that attempt failed, she took C.P. to a runaway shelter. At the shelter, C.P. received a tablet computer that she used to send nude photographs of herself to appellant.

A grand jury indicted appellant with seven counts of trafficking of persons, six as to Matteson and one as to C.P. Appellant proceeded to a trial before a jury at which Matteson testified. After the State concluded presenting its evidence, appellant challenged the sufficiency of the evidence presented and moved for an instructed verdict on all counts. The trial court granted the motion as to two of the counts related to Matteson and as to the sole count related to C.P. At the conclusion of evidence, and out of the presence of the jury, the trial court asked if either the State or defense had any objections to the jury charge. Defense counsel answered that he had no objections but "thought of a special request."

> DEFENSE COUNSEL: I'm requesting an accomplice witness testimony charge, Your Honor.
>
> THE COURT: Against?
>
> DEFENSE COUNSEL: That they don't convict Mr. Silverburg based upon her [Matteson's] testimony, that she is an accomplice.
>
> THE COURT: That request is denied.

The jury found appellant guilty of the offense of continuous tracking of persons, and the trial court sentenced him to forty years in prison.

*Silverburg*, No. 05-17-00171-CR, 2018 WL 703338, at *1 (Dkt. #19-4, pp. 1-2).

3

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d

441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S.

at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### A.    Procedural Bar (Claims One and Two)

In Claims One and Two, Petitioner challenges the sufficiency of the evidence to support his conviction. (Dkt. #3, p. 6). The Director asserts that these claims are procedurally barred. (Dkt. #18 pp. 6-7).

Petitioner did not argue sufficiency of the evidence in his direct appeal (Dkt. #19-6) or in his PDR (Dkt. #19-8); rather, he raised the sufficiency-of-the-evidence claims for the first time in his application for state habeas relief (Dkt. #19-29, pp. 63-66). The state habeas court found that a challenge to the sufficiency of the evidence is not cognizable by way of postconviction collateral attack and recommended that Petitioner's sufficiency arguments be summarily denied. (Dkt. #19-29, pp. 234-35) (citing *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004)). In turn, the TCCA denied relief without a written order based on the findings of the state habeas court and the court's independent review of the record. (Dkt. #19-27).

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman*, 501 U.S. at 729; *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).

Under Texas law, a sufficiency of the evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding. *West*, 92 F.3d at 1389 n.18 (5th Cir. 1996);

*Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte Grigsby*, 137 S.W.3d at 674. The state court clearly relied upon firmly established and regularly followed state procedural rules to deny Petitioner' sufficiency-of-the-evidence claims, which represents an adequate state procedural bar to federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991); *West*, 92 F.3d at 1398 n.18.

Nevertheless, a federal court may consider the merits of a procedurally defaulted claim if the petitioner shows "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) (citing *Coleman*, 501 U.S. at 750). To the extent Petitioner alleges his appellate counsel's ineffectiveness is cause for his procedural default, as explained below in Claim Eight, appellate counsel was not ineffective for failing to raise a sufficiency of the evidence claim on direct appeal, and Petitioner has made no showing that a failure to address the merits of the federal claims would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his claims that the evidence was insufficient.

## B.    Ineffective Assistance of Trial Counsel (Claims Three through Seven)

Petitioner asserts several claims of ineffective assistance of trial counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional

norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction and adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla*

*v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

The Court notes Petitioner asserts that his trial counsel was ineffective for failing to object in several instances. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such

a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Indeed, it is clear in the Fifth Circuit that "counsel is not required to make futile motions or objections." *Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012) (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *see also Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Furthermore, a determination of ineffectiveness depends on whether a motion or an objection would have been granted or sustained had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987); *McLean v. Dir., TDCJ-CID*, No. 4:07CV298, 2010 WL 3702585, at *6 (E.D. Tex. Sept. 15, 2010).

With the foregoing principles in mind, the Court will turn to Petitioner's specific allegations of ineffective assistance of counsel.

### 1. <u>Failure to Object to Closing Argument (Claim Three)</u>

In Claim Three, Petitioner alleges trial counsel was ineffective for failing to object to the prosecutor's closing argument that allowed the jury to consider offenses that occurred during times of voluntary prostitution by Matteson. (Dkt. #3, p. 7).

A person commits the offense of continuous trafficking of persons if that person engages two or more times in conduct constituting trafficking of persons under section 20A.02 of the penal code against one or more victims, during a period that is thirty or more days in duration. *See* Tex. Penal Code Ann. § 20A.03(a). In this case, the indictment alleged that, "[d]uring a period that was

30 or more days in duration, to wit: from on or about August 11, 2014 through on or about April 6, 2015," Petitioner committed two or more acts of trafficking of persons, and then listed the specific acts. (Dkt. #19-29, p. 13). The jury charge mirrored the timeframe set forth in the indictment. (Dkt. #19-29, p. 28). During closing argument, the prosecutor stated that any dates during the timeframe in the indictment were sufficient to prove trafficking. (Dkt. #19-17, p. 8). The jury charge stated:

> You are instructed that while the indictment alleges that the offenses were committed on or about the 11th day of August, 2014 through on or about April 6, 2015, you are not bound to find that the offense, if any, took place on that specific date, it being sufficient if such time is approximately accurate, and occurring prior to the 18th day of June, 2015, the date of the return of the indictment for said offense in this case, and is not barred by the statute of limitations.

> You are further instructed that there is no statute of limitation for the offense of Continuous Trafficking of Persons.

(Dkt. #19-29, p. 27).

In his state habeas application, Petitioner argued that trial counsel was ineffective for failing "to object to the jury being allowed to consider dates between August 11, 2014 through April 6, 2015, because there was evidence that Matteson was engaged in prostitution during periods between those dates entirely unrelated to [Petitioner]"—in other words, the jury was allowed to consider dates during which Matteson was working voluntarily as a prostitute. (Dkt. #19-29, p. 77). The state habeas court considered the issue as follows:

> 45.    Applicant alleges that counsel was ineffective for not objecting to the dates in the indictment because Matt[]eson was a prostitute on her own for periods during the alleged date range;

> 46.    The State is not required to prove an offense was committed on or about the date alleged in the indictment and can prove the offense was committed on any date prior to the return of the indictment and within the period of limitations. *See Klein v. State*, 273 S.W.3d 297, 304 n. 5 (Tex. Crim. App. 2008);

12

47.    Applicant has not otherwise pointed to any authority to show that in a continuing course of prohibited activity crime, such as this case, that the State is required to . . . prove that the prohibited activity occurred on each and every date alleged in the indictment;

48.    Applicant has failed to prove by a preponderance of the evidence that counsel was deficient for failing to object to the indictment;

49.    Applicant has failed to prove by a preponderance of the evidence that the outcome of trial would have been different had counsel made this meritless objection[.]

(Dkt. #19-29, pp. 242-43). The TCCA subsequently denied relief without a written order based on the findings of the state habeas court without a hearing and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

In rejecting Petitioner's claim, the state court implicitly found that the prosecutor's comment regarding the relevant dates was consistent with the language of the indictment and the elements the State was required to prove under Texas law. Petitioner cites no authority, and the Court has found none, holding that to show a continuous course of prohibited activity, the State is required to prove that the prohibited activity occurred during the entire period—or on each and every date—alleged in the indictment. Furthermore, Petitioner's argument that Matteson was voluntarily engaged in prostitution during the alleged time period is a factual dispute that the jury resolved. Petitioner fails to show that an objection to the indictment's offense date range or the prosecutor's closing statement regarding that timeframe would have been granted or that the result of the proceeding would have been different. Thus, Petitioner fails to show that the state court unreasonably applied *Strickland* or that its denial of the claims was unreasonable or contrary to clearly established federal law. Accordingly, Claim Three should be denied.

2.    **Failure to Request Accomplice-Witness Jury Instructions (Claims Four and Five)**

In Claims Four and Five, Petitioner contends trial counsel was ineffective for failing to adequately request an accomplice-witness as a matter of law instruction (Claim Four) and an accomplice-witness as a matter of fact instruction (Claim Five). (Dkt. #3, pp. 7-8).

Trial counsel requested that the jury be given an accomplice-witness instruction that stated Matteson was an accomplice and that the jury could not convict Petitioner based on her testimony. (Dkt. #19-16, pp. 228-29). The trial court denied the request. (Dkt. #19-16, p. 229). On direct appeal, Petitioner argued that the trial court erred by denying his request for an accomplice-witness instruction to be included in the jury charge. The Fifth District Court of Appeals rejected the argument as follows:

> An accomplice is someone who, under the evidence, could have been charged with the same or lesser-included offense as that with which the defendant was charged. *See Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). A proper accomplice-witness instruction informs the jury that a witness is either an accomplice as a matter of law or an accomplice as a matter of fact. *See id.* Whether a defendant is entitled to an accomplice-witness instruction is a function of the evidence produced at trial. *Ash v. State*, PD-0244-16, 2017 WL 2791727, at *4 (Tex. Crim. App. June 28, 2017). If the record contains evidence that a witness may have been an accomplice, the issue should be submitted to the jury to decide whether the witness was an accomplice as a matter of fact. *Id.*

> A witness is an accomplice as a matter of law in the following situations: (1) if the witness has been charged with the same offense as the defendant or a lesser-included offense; (2) if the State charges a witness with the same offense as the defendant or a lesser-included of that offense, but dismisses the charges in exchange for the witness's testimony against the defendant; and (3) when the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice. *Ash*, 2017 WL 2791727, at *5-6.

> When the issue of a trial court's failure to give an accomplice-witness instruction is raised on appeal, we first determine whether a trial court erred by failing to sua sponte give that instruction before it considers whether a defendant preserved his complaint for appeal, a matter that is pertinent to a harm analysis. *See Zamora*, 411 S.W.3d at 506. While the State urges that the standard of review is abuse of discretion, we note the Court of Criminal Appeals has not conclusively settled that

question. *But see Smith v. State*, 332 S.W.3d 425, 441 (Tex. Crim. App. 2011) (noting trial judge has "some discretion" in determining whether a witness is an accomplice in law but ultimately avoiding reconsideration of rule treating witness under indictment as per se accomplice in law); *see also Paredes v. State*, 129 S.W.3d 530, 537 (Tex. Crim. App. 2004) (noting trial court did not "abuse its discretion" in declining to give any accomplice instruction in fact or law). However, because we conclude the evidence of Matteson's involvement was too weak to compel an instruction as a matter of law regardless of the standard, we have no further need to explore the standard of review issue. *See Ayala v. State*, No. 05-14-00530-CR, 2015 WL 3869722, at *4 (Tex. App.–Dallas June 23, 2015, pet. ref'd).

Appellant argues Matteson was an accomplice as a matter of law because she was susceptible to prosecution for the lesser-included offense of trafficking a person. Alternatively, he argues she was an accomplice as a matter of law because she was susceptible to prosecution for the offense for which he was charged: continuous trafficking of persons. Finally, he argues she was an accomplice as a matter of fact. Appellant focuses his arguments on the charge in the indictment for trafficking C.P. We will do the same.

A person commits the offense of continuous trafficking of persons if that person engages two or more times in conduct constituting trafficking of persons under section 20A.02 of the penal code against one or more victims, during a period that is thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 20A.03(a). A person commits the offense of trafficking of persons if the person knowingly traffics a person and through force, fraud, or coercion causes the trafficked person to engage in the offense of prostitution. *See id.* § 20A.02(a)(3)(A). The penal code defines "traffic" to mean to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means. *See id.* § 20A.01(4). A person also commits the offense of trafficking of persons if the person knowingly traffics a person younger than 18 years of age and by any means causes the trafficked person to engage in the offense of sexual performance by a child. *See id.* §§ 20A.01(1), 20A.02(a)(7)(I). Under the penal code, "sexual performance" includes any photograph that includes lewd exhibition of the child's private areas and that can be exhibited before an audience of one or more persons. *See id.* § 43.25.

Regarding whether Matteson was an accomplice as a matter of law, she was never charged with the same offense as appellant or a lesser-included offense. Thus, the sole question is whether the evidence was so one-sided that any rational juror would have concluded Matteson was an accomplice as a matter of law. *See Ash*, 2017 WL 2791727, at *5-6. We conclude that it is not nearly so one-sided. The record shows that while Matteson purchased a bus ticket online for C.P. and that C.P. then travelled to a home at which Matteson paid the rent, Matteson did not know C.P. was a minor at that time and that when she learned C.P. was a minor, she took her to a runaway shelter. Further, there is no evidence from which a rational juror could infer that Matteson had any intent that C.P. would engage in sexual performance. Thus, there is insufficient evidence from which any rational juror would have

concluded that Matteson knew C.P. was a minor when she purchased C.P.'s bus ticket or that she caused C.P. to engage in sexual performance by a child. Therefore, there was insufficient evidence from which any reasonable juror would have concluded Matteson was an accomplice as a matter of law. *See Ash*, 2017 WL 2791727, at *5-6.

Appellant urges in the alternative that Matteson was an accomplice as a matter of fact, arguing that if the trial court had some reservation about whether Matteson was an accomplice as a matter of law, she qualified, at least, as an accomplice as a matter of fact. However, as discussed above, there was no evidence that Matteson knew C.P. was a minor when she purchased C.P.'s bus ticket or that she caused C.P. to engage in sexual performance by a child. Thus, the record does not contain evidence that Matteson may have been an accomplice, such that the issue should have been submitted to the jury to decide whether the witness was an accomplice as a matter of fact. *See Ash*, 2017 WL 2791727, at *4.

We conclude the trial court did not err by not including an accomplice-witness instruction in the jury charge. Accordingly, we overrule appellant's sole issue.

*Silverburg*, No. 05-17-00171-CR, 2018 WL 703338, at **1-3 (Dkt. #19-4, pp. 2-5). Petitioner argued this issue in his PDR (Dkt. #19-18), which the TCCA refused (Dkt. #19-9).[2]

In his state habeas application, Petitioner presented ineffective assistance claims related to the accomplice-witness instruction. (Dkt. #19-29, pp. 67-70). The state habeas court denied the claims as follows:

8.    Applicant complains that his trial counsel was ineffective for failing to request an accomplice-witness instruction with regard to Kayla Matteson;

9.    Trial counsel did make the request and the request was denied. 3 RR 228-29;

10.   The trial court's denial of trial counsel's request was the sole issue on direct appeal. *Silverburg v. State*, No. 05-17-00171-CR, 2018 WL 703338 (Tex. App.—Dallas Feb. 5, 2018, pet. ref'd) (not designated for publication);

11.   Applicant has not shown how counsel's request could have been more specific, especially in light of the fact that the appellate court found the request specific enough to be able to analyze and decide the issue on appeal;

---

[2] The TCCA's refusal of the PDR constitutes a denial of relief on the merits. *See Singleton*, 178 F.3d at 384. Furthermore, the denial is presumed to rest upon the same grounds articulated by the Fifth District Court of Appeals in rejecting Petitioner's claim on direct appeal. *See Ylst*, 501 U.S. at 803. In his federal petition, Petitioner does not challenge the trial court's refusal to give an accomplice-witness instruction.

12.    Applicant has failed to prove by a preponderance of the evidence that counsel was deficient in his request;

13.    Applicant has failed to prove by a preponderance of the evidence that the outcome of trial would have been different had counsel made the request in another manner[.]

(Dkt. #19-29, pp. 235-36). The TCCA subsequently denied relief without a written order based on the findings of the state habeas court without a hearing and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner fails to rebut the presumptive correctness of the state court findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. The record demonstrates that trial counsel adequately requested an accomplice-witness instruction, and indeed, the Fifth District Court of Appeals was able to thoroughly analyze whether the trial court erred in denying the request. The fact that trial counsel's request was not successful does not amount to ineffective assistance of counsel. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (holding that unsuccessful efforts do not constitute ineffective assistance of counsel). Furthermore, in light of the state appellate court's determination that the evidence adduced at trial did not support giving an accomplice-witness instruction either as a matter of law or fact, Petitioner cannot demonstrate that had trial counsel made the request in a different way, the request would have been granted and the result of the trial would have been different. Petitioner fails to show that the state court unreasonably applied *Strickland* or that its denial of the claims was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to Claims Four and Five.

**4.**    <u>**Failure to Object to Evidence of "No-Billed" Assault Allegations (Claim Six)**</u>

In Claim Six, Petitioner asserts trial counsel was ineffective for failing to object on the grounds of double jeopardy, res judicata, collateral estoppel, or issue preclusion to evidence that was tied to allegations that had been "no-billed" by a grand jury. (Dkt. #3, p. 8).

Trial counsel objected to the admission of evidence that Petitioner assaulted Matteson in November 2014 in Dallas County because it had been "no-billed" by a grand jury. (Dkt. #19-16, p. 12). The prosecutor explained the evidence was relevant because it was part of Petitioner's scheme or motive to coerce or terrorize Matteson into engaging in prostitution. (Dkt. #19-16, pp. 13-15). The trial court agreed and overruled trial counsel's objection. (Dkt. #19-16, p. 15).

In his state habeas application, Petitioner argued that trial counsel was ineffective for failing to suppress the "no-billed" assault on grounds of double jeopardy, res judicata, collateral estoppel, or issue preclusion. (Dkt. #19-29, pp. 73-74). The state habeas court denied the claim as follows:

> 27.    Applicant complains that trial counsel did not seek to suppress evidence of the November 2014 assault in Balch Springs on the grounds that a Dallas County Jury "no billed" the case;
>
> 28.    Trial counsel did argue that the State was not permitted to present evidence about the assault because it was no-billed and that argument was overruled. 3 RR 12-15;
>
> 29.    Applicant has failed to prove by a preponderance of the evidence that counsel was deficient;
>
> 30.    Applicant has failed to prove by a preponderance of the evidence that the outcome of trial would have been different had counsel made an argument he did, in fact, make[.]

(Dkt. #19-29, pp. 238-39). The TCCA subsequently denied relief without a written order based on the findings of the state habeas court without a hearing and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner fails to rebut the presumptive correctness of the state court findings with clear and convincing evidence, nor does an independent review of the state court record reveal clear and convincing evidence that would rebut the presumption of correctness. Indeed, the record demonstrates that trial counsel did make an objection regarding the complained-of-evidence. (Dkt. #19-16, pp. 12-15). That the objection was not successful does not amount to ineffective assistance of counsel. *See Youngblood*, 696 F.2d at 410. Furthermore, although trial counsel did not specifically object on the basis of double jeopardy, res judicata, collateral estoppel, or issue preclusion, Petitioner fails to show that an objection based on any of these legal theories would have been successful. "Neither the double jeopardy clause of the federal constitution nor of the state constitution could bar the introduction of evidence of an extraneous offense for which a defendant had been 'nobilled'; jeopardy does not attach following a grand jury's return of a "no bill." *Rexford v. State*, 818 S.W.2d 494, 497 (Tex. App. 1991). Furthermore, collateral estoppel does not bar introduction of evidence of a "no-billed" extraneous offense because return of a "no bill" does not determine any ultimate fact issues. *Id.*; *see also State v. Comerford*, 787 S.W.2d 163, 165 (Tex. App. 1990) (collateral estoppel barred reintroduction or relitigation of facts already necessarily established against State by previous verdict); *Ex parte McCullough*, 746 S.W.2d 29, 31 (Tex. App. 1988) (collateral estoppel applied only when the defendant was acquitted of ultimate fact issue in prior trial); *Lozano v. State*, 676 S.W.2d 433, 436 (Tex. App. 1984) (collateral estoppel only arose when trier of fact resolved some or all of factual elements of offense charged). "Thus, although the double jeopardy clauses of the federal and state constitutions and collateral estoppel may bar introduction of evidence concerning an extraneous offense for which a defendant was acquitted, neither the double jeopardy clauses nor collateral estoppel bar introduction of evidence concerning an extraneous offense for which a defendant was 'nobilled.'" *Rexford*, 818 S.W.2d at

497; *see also Shumake v. State*, 502 S.W.2d 758, 760 (Tex. Crim. App. 1973) (holding that former grand jury proceeding resulting in a no-bill does not implicate double jeopardy or collateral estoppel); *United States v. Ten Firearms & Twenty-Four Rounds of Ammunition*, 444 F. Supp. 305, 308 (N.D. Tex. 1977) ("Being no billed by a grand jury does not put a person in jeopardy or amount to a judicial acquittal which would give rise to application of the doctrine of collateral estoppel."). Additionally, "[r]es judicata means that something has been adjudged; i.e., judgment has been entered in a court and therefore the matter cannot be raised in a subsequent judicial proceeding. Returning a true bill or a no bill is not a 'judgment' by any stretch of the imagination." *In re Grand Jury Proc.*, 443 F. Supp. 1273, 1283 (D.S.D. 1978); *see also United States v. Fields*, 932 F.3d 316, 322-23 (5th Cir. 2019) (a grand jury's no-bill is a decision not to charge the accused with a particular offense, not a judgment that no unlawful conduct whatsoever occurred; the grand jury issuing a no-bill does not mean that the act did not occur).

Petitioner fails to show that the state court unreasonably applied *Strickland* or that its denial of the claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to Claim Six.

### 5. Cumulative Error (Claim Seven)

In Claim Seven, Petitioner argues trial counsel was ineffective based on the cumulative effect of counsel's errors. (Dkt. #3, p. 9).

Petitioner raised this claim in his state habeas application (Dkt. #19-29, p. 79), and the state habeas court rejected it, finding that there was "no error to cumulate" (Dkt. #19-29, p. 243, ¶ 51). The TCCA subsequently denied relief without a written order based on the findings of the state

habeas court without a hearing and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

"Federal habeas relief is only available for cumulative errors that are of a constitutional dimension." *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)). As previously discussed, none of Petitioner's ineffective assistance of trial counsel claims establish ineffective assistance under *Strickland*. Petitioner has not identified errors of constitutional dimension. Thus, Petitioner fails to demonstrate that the state court's rejection of his cumulative error claim was objectively unreasonable. Accordingly, Claim Seven should be denied.

## C.   <u>Ineffective Assistance of Appellate Counsel (Claim Eight)</u>

In Claim Eight, Petitioner contends his appellate counsel was ineffective for failing to raise a legal insufficiency claim on direct appeal and for failing to adequately argue the sole issue raised on appeal—the accomplice-witness instruction.  (Dkt. #3, p. 9).

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, a petitioner claiming ineffective assistance of appellate counsel must show deficient performance and prejudice. *Smith,* 528 U.S. at 285. To establish that appellate counsel's performance was deficient, the defendant must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* The defendant must also establish prejudice by

demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.* As the Fifth Circuit Court of Appeals explained:

> Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[ ] out weaker arguments on appeal'" and focus on key issues.

*Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2015) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Petitioner's claim that trial counsel was ineffective for failing to challenge the sufficiency of the evidence was fully developed during the state habeas corpus proceedings. Petitioner's appellate counsel submitted an affidavit (Dkt. #19-29, pp. 115-19) in response to the claim. In his affidavit, appellate counsel first set forth his legal background and experience:

1.    I have been licensed to practice law in Texas since 2010.

2.    I am admitted to practice before the Seventh Circuit (federal appellate court in Chicago), Fifth Circuit (federal appellate court in New Orleans), Northern and Eastern District of Texas (federal trial courts), and all state courts in Texas.

3.    I estimate that I have completed more than 100 criminal appeals ranging from misdemeanors to capital murder. I started this as a briefing attorney for Justice Evelyn Keyes on the First Court of Appeals in Houston. I have argued before the Texas Court of Criminal Appeals.

4.    I practice all over Texas and in federal appellate courts. I do not have any special experience in Collin County. But appeals from Collin County go to the Dallas Court of Appeals. I have completed probably fifty briefs at the Fifth Court of Appeals in Dallas.

. . . .

6.    I estimate that approximately 85% of my practice is criminal practice. But 98% of my practice is appellate practice.

(Dkt. #19-29, pp. 115-16). Appellate counsel then provided the following explanation for why he did not pursue a sufficiency argument on appeal and instead chose to focus on the accomplice-witness instruction issue:

10.    In one issue, I argued that the trial court erred when it denied his request for an accomplice-witness instruction in the jury charge.

11.    . . . . It is not feasible (generally) to discuss the issues raised in an appeal with the client. There are thirty days (which are freely extended to sixty days—i.e. one generally "free" thirty-day extension) in which to file a brief. During this period the attorney must read the entire record, identify the issues, write and edit the brief, insert the tables of contens and authorities, and then file the brief. But, perhaps more importantly, clients are not equipped to evaluate potential-appellate issues. Generally, clients want to argue sufficieny and they want to argue that the witnesses at trial were not credible. Appeals focus largely on legal errors and most clients are not equipped to evaluate the jury charge or the indictment looking for such errors. When Johnta and I met this is something that I likely explained to him.

12.    I do not recall Johnta asking me to raise sufficiency.

13.    Suffiiency is a difficult issue to win on. I have enough experience with the intermediate-appellate courts to only raise sufficiency when the issue has potential merit. I have argued sufficiency before the Texas Court of Criminal Appeals (after losing in the intermediate-appellate court but garnering a 37-page dissent in my favor). I lost this case 6-2 . . . . I have won a sufficiency case at the Court of Criminal Appeals on a continuous sexual abuse of a child case. This case was lost at the intermediate-appellate court but we won at the Court of Criminal Appeals.

a.    The evidence—and the intermediate-appellate court does not re-evaluate credibility—was sufficient to establish that Johnta committed this offense. That the evidence was sufficient does not mean that Johna committed the offense but only that a rational juror could have concluded that he did. Once this threshold has been met then there is no reason to make a sufficiency argument.

b.    Here, the State charged Johnta with Continuous Trafficking of Persons.

c.     A person commits the offense of continuous trafficking of persons if that person engages two or more times in conduct constituting trafficking of persons under section 20A.02 of the penal code against one or more victims, during a period that is thirty or more days in duration. *See* TEX. PENAL CODE ANN. § 20A.03(a). A person commits the offense of trafficking of persons if the person knowingly traffics a person and through force, fraud, or coerion caused the trafficked person to engage in the offense of prostitution. *See id.* § 20A.02(3)(A). The penal code defines "traffic" to mean to transport, entice, harbor, provide, or otherwise obtain another person by any means. *See id.* § 20A.01(4). A person also commites the offense of trafficking of persons if the person knowingly traffics a person younger than 18 years of age and by any means causes the trafficked person to engage in the offense of sexual performance by a child. *See id.* §§ 20A.01(1), 20A.02(a)(7)(I). Under the penal code, "sexual performance" includes any photograph that includes lewd exhibition of the child's private areas and that can be exhibited before an audience of one or more persons. *See id.* § 43.25.

d.     On June 18, 2015, the State obtained an indictment against Johnta Silverburg for the offense of continuous trafficking of persons. [CR 14-15]. The indictment alleged various claims that Silverburg trafficked Kayla Matteson and one claim that Silverburg trafficked C.P. Trial began on February 7, 2017. [1 RR 3]. Silverburg pleaded not guilty. [3 RR 11].

e.     Matteson begam working as a prostitute around age fifteen when she ran away from her home in North Dakota. [3 RR 40]. Eleven years after she became a prostitute, Matteson met Silverburg. [3 RR 41; 107]. According to Matteson she and Silverburg met on a a "social site" and, beginning in March 2021, Silverburg watched Matteson's child while Matteson had sex with her clients. [3 RR 42-43]. When Matteson was twenty-one years old Silverburg became Matteson's "pimp." [3 RR 43]. Matteson moved out of an apartment that she and her child shared with a client and she moved into an aprtment

with Silverburg. [3 RR 45-46]. Eventually another woman started to live in the aprtment with them. [3 RR 46]. On Matteson's birthday, Silverburg decided to spend the day with the other woman in the apartment and Matteson spent the day drinking. [3 RR 49-51]. Matteson became jealous that Silverburg spent the day with "someone else and not [her]" and they got into an argument. [3 RR 48]. Eventually Silverburg slapped Matteson, giving her two black eyes. [3 RR 49]. Matteson explained that she wanted to leave the aprtment and, only because she had been drinking alcohol all day, she decided to do so by jumping from the second story. [3 RR 50-51].

f.    In November 2013, Silverburg and Matteson moved to Balch Springs, Texas. [3 RR 53]. Matteson was beaten; she explained that this occurred because Silverburg discovered that Matteson was using controlled substances. She later explained that someone other than Silverburg beat her and that he had nothing to do with this incident. [3 RR 53; 54].

g.    Matteson moved from Balch Springs and got her own apartment in Plano, Texas and soon became friends with Silverburg again. [3 RR 75; 76]. Initially she lived in the apartment alone but eventually Silverburg and two other women moved in with Matteson. [3 RR 75]. These four stayed in . . . Matteson's apartment for "a couple of weeks to a month." [3 RR 77]. Then they all moved to a house in Plano on a street named Cloverhaven that Matteson paid for; Matteson then used the apartment to meet her clients. [3 RR 76-77; 91]. Matteson started seeing clients daily around January 2015, a practice she continued up to and presumably past the time that she testified. [3 RR 79; 81].

h.    At some point a minor, C.P., moved into the house. [3 RR 95; 97]. Matteson told Silverburg that this was not a "good idea" and Matteson drove C.P. to a runaway shelter. [3 RR 97].

i.    Matteson testified that Silverburg did not threaten, coerce, or even drive her to meet her clients. [3 RR 114]. Instead, Matteson testified that she did this willingly. [3 RR 114]. Indeed, Matteson had her own

vehicle and she drove herself to meet clients. [3 RR 114]. Silverburg supervised Matteson's child while she was with her clients. [3 RR 115].

j.    Matteson specifically denied that "Silverburg transported, enticed, recruited, harbored, provided, or otherwise" compelled Matteson to participate in any sort of prostitution, ever. [3 RR 119].

k.    While Matteson specifically denied that Silverburg "trafficked" her, the jury was free to disbelieve this testimony. When considering a sufficiency argument the evidence that Johnta became Matteson's "pimp" and that he beat her and the evidence of C.P. was sufficient to secure the conviction.

l.    The Court of Appeals opinion starts, "Appellant met Kayla Matteson in early 2011. At first, he cared for her son while she worked as a prostitute, and by the end of that year, he came to be managing her prostitution, requiring her to give him the money she made."

m.    That the evidence was sufficient does not mean that Johnta committed this offense. But it means that a rational jury could have concluded that Johnta committed this offense and that is enough to preclude a successful challenge to the sufficiency of the evidence.

n.    I do not think that sufficiency was a viable argument for Johnta. I did think that a preserved jury charge error was a good issue for Johnta and I made that argument. I made it in the brief, in motions for rehearing, etc.

o.    I think that the intermediate-appellate court erred in its opinion. I filed a motion for rehearing and a petition for discretionary review (attached). The PDR explained why the intermediate-appellate court's decision was (in my estimation) wrong. The Court of Criminal Appeals disagreed with me and sided with the intermediate-appellate court. But the point is that we presented a viable argument that gave Johnta the very best chance to prevail.

14.    I doubt I discussed my decision[] to pick this issue with Johnta. If he wrote to me and asked about my decision, then I likely did explain it. But I cannot remember if this happened.

(Dkt. #19-29, pp. 116-19).

The state habeas court found that appellate counsel was "an officer of the Court, well known to the court, and credible," and that his "affidavit [was] credible." (Dkt. #19-29, p. 234, ¶¶ 3-4). The state habeas court then issued the following findings concerning Petitioner's ineffective assistance of appellate counsel claim:

52.    Applicant alleges that appellate counsel was ineffective for not challenging the sufficiency of the evidence to support his conviction;

53.    The Supreme Court has stated that the "process of 'winnowing out weaker claims on appeal and focusing on' those more like[ly] to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Burger v. Kemp*, 483 U.S. 776, 784 (1987);

54.    [Appellate counsel][] reviewed the record and the facts of the case, and determined that the best issue to raise in this case was the trial court's denial of Applicant's request for an accomplice-witness instruction;

55.    Counsel further explains that sufficiency arguments are difficult to win on appeal and that, in his opinion, the evidence was sufficient to support Applicant's conviction and thus was not a viable argument for Applicant's appeal;

56.    In his affidavit, counsel outlines the applicable law and the facts of this case to show how he came to this conclusion;

57.    In counsel's expert opinion, the preserved jury-charge issue was the most viable argument available that would give Applicant the best chance of success;

58.    Applicant has not shown by a preponderance of the evidence that appellate counsel's decision was deficient; and

59.    Applicant has not shown by a preponderance of the evidence that the outcome of the appeal would have been different had counsel challenged the sufficiency of the evidence to support his conviction.

(Dkt. #19-29, pp. 243-44). The TCCA subsequently denied relief without a written order based on the findings of the state habeas court without a hearing and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner's claim that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim on appeal is refuted by the record. Petitioner fails to show that had appellate counsel raised this claim, he would have prevailed on appeal, because a rational jury could have found beyond a reasonable doubt that Petitioner committed the offense of continuous trafficking of persons. *See Pilon v. Bordenkircher*, 444 U.S. 1, 2 (1979); *Jackson*, 443 U.S. at 319. It therefore follows that Petitioner's appellate counsel was not deficient for failing to raise sufficiency of the evidence on direct appeal. *See Strickland*, 466 U.S. at 687; *Phillips*, 210 F.3d at 348. Additionally, Petitioner fails to overcome the presumption that appellate counsel made a reasonable strategic decision to pursue the accomplice-witness instruction on appeal—an issue that had been properly preserved at trial. That the argument was not successful on appeal does not equate to ineffective assistance. *See Youngblood*, 696 F.2d at 410. Thus, Petitioner fails to show that the state court unreasonably applied *Strickland* or that its denial of the claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner's Claim Eight should be denied.

## V. CONCLUSION

Petitioner fails to show that he is entitled to federal habeas relief. Specifically, Petitioner is barred from raising claims that the evidence was insufficient. Petitioner also fails to demonstrate that trial and appellate counsel rendered ineffective assistance under *Strickland*. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without

29

reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VII. RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 9th day of May, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE